and I believe we have present here counsel for Mr. Britt. Good morning, your honors. My name is David Avery. I'm counsel for Eddie Britt. Okay. And so do we have counsel for the United States on the phone? Yes, your honor. My name is Lori Sook. I'm an assistant U.S. attorney for the District of Montana. You're coming through loud and clear. Thank you, Judge Kuczynski. In fact, I would say, too loud. I will. That's not uncommon for me, sir, and I will try and temper my volume. Actually, maybe we can just modulate here. Is there any way of modulating? Yeah, you don't need to do anything. We'll try to get you down to the level. Thank you, your honor. Okay. Mr. Avery, you have the floor. Thank you, your honor. And if I could, I'd like to reserve three minutes of rebuttal, please. You have whatever time is on your clock there. Thank you. Your honors, my client, Eddie Britt, has presented several claims, and although they're interrelated, I think his different arguments each begins with a premise, and so it's difficult to talk about his overall position unless it's clear which premise is in play with respect to each claim. And what I'm talking about specifically is the notion of whether or not because the government charged this case conjunctively and then offered a jury instruction that was also conjunctive, i.e., that Mr. Britt assaulted, intimidated, and interfered with the U.S. Postal Service employee Elaine Gordon, that it was then required to approve all three of the prongs of that conjunctive charge and instruction. And our position, of course, is that having charged him in that regard and also having asked for an instruction and received an instruction to that effect, that the government was required to approve all of those prongs. Do they really dispute that? Does the government really dispute that? At trial, the government did dispute that. But here, they're disputing it here? Well, it's implicit, I think, in the government's response that, actually, it needed to approve all three prongs. And I also think in its argument it kind of shifted back and forth because it argued that it had approved all three prongs. But the reason it's important to my mind — That's how I read it. They conceded that they had to approve assault. Well, I agree with you, Your Honor. And they — So that takes us to the position of whether or not they have to prove that my client actually caused Ms. Gordon, the U.S. Postal Service employee, to fear immediate bodily harm. Well, maybe you're not quite there. Okay. Whatever they did at the trial level, is there any case that says that on appeal, they have to demonstrate that they actually approved all three of the conjunctives? Because I realize we have cases that say, well, they made it harder on themselves at trial. But is there authority that they must, on appeal, sustain all three? Your Honor, I don't think that there necessarily is with respect to the appellate court having addressed the specific question that you've asked. But I will note that the three cases that are cited in Mr. Britt's brief state that the conjunctive charge and instruction leads to the extra burden, and then the appellate court goes through the analysis by making sure whether or not the, you know, both prongs of the conjunctive charge were approved. And so it's very implicit in the analysis in those cases, and I'm talking about Savage, Booth, and Jackson, that the court actually checked to make sure that both prongs were approved. In some cases, it had happened. In some cases, it hadn't. And so the case fell according to — And what? The case fell according to whether or not the second prong was proved. And so I don't think a court has genuflected or reflected like you have about whether or not, on appeal, should the government now have to sustain the same conjunctive proof, but the analysis of those courts. Which case was it? I just lost it. Which case was it that reversed because all of the conjunctives were not proved? Your Honor, I believe that that was — and if I can't find it now, I will when I take time off and come back to my remote. That's okay. Just go ahead. Not to worry. You don't have to go scrounging for it. That's all right. I just think that all three of the cases, it's pretty clear that then the court goes through and checks to make sure that the conjunctive prongs were approved. I was just looking for a case. Okay. I thought I missed the case that said that you didn't prove the conjunctive, and therefore it's reversed.  It may have happened. And I will look and check here in a minute. And so getting to whether or not there was reasonable or actually actual fear of immediate bodily harm proved in this case, when Mr. Britt made a Rule 29 motion, the government did not go through that element, did not check to see whether that approved. And if I could just quote one paragraph from the record, the district court said after the Rule 29 motion was made, well, it's argument for the jury. There's no question that a jury could find, well, they will find Ms. Gordon was a postal employee. And there's no question he used a weapon. There's no question that he was waving it around and displaying the knife. The question is for what purpose. And that's the dispute the jury is going to resolve. The court did not say the question is whether or not she actually experienced fear of bodily harm. The court didn't consider that. And so in the court's mind, it thought that a Rule 29 motion should be denied without consideration of the fear element. And I think the record is pretty clear that she didn't experience fear. I mean, she was asked whether she felt that she was put in harm's way, which I think Mr. Britt explains was kind of a way to dance around the more simple question of were you afraid. The government wouldn't ask that question. It's an interesting concept. We always talk about fear of bodily harm. So I suppose you'd say that, let's say I'm some really strong guy, Schwarzenegger. And this guy comes up to me and he starts swinging at me. And I'm so tough that nothing scares me. I take it I can't be assaulted under that theory. Well, there probably is some kind of spectrum where, you know, if you're that much larger than the other person, if he actually hits you, then there's an assault. But we're in this is a great case because Mr. Britt, if I if I say, oh, I've got to defend myself against this guy. And I step back and I assume a defensive posture. But I figure I can take you out, baby. And you're not really afraid. I'm not. I'm not afraid. So therefore I cannot have been assaulted. That's your position. That's that's. And I think that's reflected in the jury instruction. And the comments to the relevant jury instruction says when the assault consists of a display of force and that's versus actual contact, it must actually cause reasonable apprehension of immediate bodily harm. The apprehension of bodily harm is is a different animal from am I scared? I believe, you know, in my example, I step back and sure, I have apprehension. This guy is going to hit me, but I'm not scared because I figure I'm going to take this guy out. It doesn't mean I don't have any apprehension necessarily. That's what I'm trying to explore. So this lady, she's faced with this idiot waving this this knife at her and threatening, you better not do this ever again. And she steps back and she says, I got to pull this guy down somehow. But she doesn't say. And, you know, I was trembling with fear. Does that mean she didn't have any apprehension? Well, she when she actually did, though, in her direct testimony, say I it never occurred to me that I would be harmed. So you can take a step further. And the case really does mean skeet. We recite that whether true or not, Robert said he had no fear. And then the court goes on to say, if the jury literally believes that, maybe there's not an assault. But the fact that he says no fear doesn't preclude the jury from deciding it's a situation that person would have to be fearful. So we'll convict. And don't we have that situation here? Well, in skeet, though, I mean, I think that the reason it was reversed was because it was a possibility that that he actually wasn't fearful. And it's a lot more complicated than that. My point is skeet says in so many words that the fact that the witness may say, I feel no fear or I had no fear is not dispositive, does not preclude the jury from reaching the conclusion that someone is appropriately fearful in that circumstance. And we're going to convict in your honor. That case is a situation where there is a couple that are standing pretty close to each other. And the brother, I think, of the of the man shoots a gun in between the two of them. And I think that in that situation, a jury probably there probably would be a less of a sufficiency of the evidence argument than in this situation where we have a ninety five pound old man who's got a countering a nine inch knife. A little man with a knife can do a lot of damage. Right. But I still think that the jury can. We're the jury is still left with a different situation than a gun. That's a bullet is firing between two people. The jury is still left with the evidence entitling it to make the decision that it wants to make that. That's that's that's a different issue because the court actually, although the instructions said that there is a reasonable apprehension of fear that needs to be of bodily harm that needs to be found. The prosecutor was allowed to abrogate that. You have that argument. I'm not saying that's gone, but it seems to me that that unless there's something more compelling than the statement of the witness here, and it really was unequivocal. I mean, she talked about the the defendant being very angry, a real scary look. I didn't want it to get worse than it already was. It was a bad situation. Now, I don't know that it's impossible for a jury to decide based on that evidence that that the the victim or the person who was the target of the alleged assault was sufficiently fearful to close the circle. Well, I suggest, Your Honor, that there was an investigation that preceded this case. And the government knew which question it was going to ask and wasn't going to ask. And it had talked. I hope so. Right. It's usually you know what questions you're going to write. And I think the government knew that if asked the question, were you afraid that you were going to be hurt? She would have said no. And so instead, it bounced around that question and said, why did the defendant ask the question? Right. Exactly. Well, that's that's not I mean, I don't think they can be faulted for not asking the question. If Skeet says that even testimony saying he had no fear doesn't preclude the jury from reaching a different conclusion, then I don't think the government can be faulted for not asking a question, which obviously the defense counsel was free to ask on his own or her own. So if I could close by just pointing out a case that I did a 28 J letter, an informal one here when I came into court. And that is Gibbs and V Ortiz, which came down from this court on Monday. And toward the end of the case, it deals with the factor of a prosecutor emphasizing a jury instruction to the prosecution's advantage, which it turns out that instruction was unlawful. And therefore, this court noted that although prosecutor statements regarding jury instructions aren't don't weigh as heavily as the instructions themselves, that the prosecutor's statements should be taken into account by this court when it considers whether the jury instructions were proper. I think that the relevance of the case will be fairly self-evident when when your honors look at it in the context of this case. Thank you. We'll hear from the government. Thank you, Judge Kaczynski. Again, my name is Lori Sook. I wasn't trial counsel and I didn't write the appellate brief, but I'm here arguing on behalf of the United States. I would point the court to page 19 of our brief. This is to respond to a comment by Judge Kaczynski. I apologize that I don't recognize the other two voices, but I do recognize yours, sir. Immediately about whether the government conceded the point as to whether we had to prove all three elements of this crime. That was not a concession made by the government. What the government did is charge in the conjunctive. The jury was instructed in the conjunctive. We gave ourselves clearly more of a burden. But the Booth case is clear that when a statute specifies more than one way that an offense can be proven if there is sufficient proof of any of the means of the statute. But in this case, Judge Kaczynski is right. We don't concede that there wasn't proof on all of the means of this statute, including whether Ms. Gordon was assaulted. We believe that there was a reasonable apprehension of fear no matter how you look at it in this case. And just because Ms. Gordon was professional, stood up to Mr. Britt, and did her job as best she could facing a nine-inch knife, that does not mean that the jury wasn't well within its purview in finding that she was assaulted as well as impeded or interfered with. If properly instructed. And the instruction here actually inerred to the benefit of the defendant, Judge Kaczynski, because instructed as well conjunctively, not disjunctively. The government, though, did misstate the burden in its closing argument. In the rebuttal argument, there was a misstatement that the jury did not have to find that Ms. Gordon's intent was an element of this offense. There was a misstatement? You mean it just sort of crept in? It wasn't the government? It was the government. It was in our rebuttal argument. Let's say it together. Let's say it together. The government misstated the instruction. It did. Yes. That's correct. It's not something that just sort of happened. It was caused by a government lawyer. Exactly. That's correct. And then it was pointed out by defense counsel. It was. And the government lawyer at that point said, oh, gosh, I goofed. I apologize. I'm going to take it back. I'm going to correct the error. Right? Is that what happened? No. Nothing else was said on the point. Wait a minute. Just a minute. Nothing else was said. So the government then misstates the instruction. It is pointed out to the government by the defense lawyer, and the government persists in the error. Says, we said it and we're glad. Is that what happened? I don't think that we can ascribe a motive to Mr. McClain, but certainly he continued on. What's to that effect? We're not taking any of it back. Well, the effect of it, Your Honor. Is that right? None of it was taken back. None of it was taken back. Okay. And then there was somebody else in the courtroom, the judge. And the judge said, well, Mr. Government Lawyer, you goofed. You need to take it back. Is that what happened? No. The court overruled it. No. The court said no. The government is okay. The court overruled it, Your Honor. Overruled it. So why isn't this instructional error? Why isn't this instructional error? So that even if there was, or were, or had been enough evidence to sustain a jury finding of assault, the government instruction took back a key element. It took back a key element, and that is the element of fear, the question of subjective apprehension. You will have to find, if you go that route, Your Honor, you will have to find that less than one page of the trial transcript took back. I don't have any choice but to go. Can I avoid going? I mean, rather not. I'd rather go to Florida or someplace. But I'm here deciding this case. You are, sir. If I'm going to decide this case, if I'm going to decide this case, I have to go through that particular gateway, right? But you also have to consider... I do have to go... You have to... I'm avoiding that gateway, saying, oh, never mind, there's something else going on. No. You have to go through this gateway. You have to walk through the gate, Your Honor, but when you walk through the gate... Now, when I walk through it, I see a government lawyer who misstates the law. I see a defense lawyer who calls the attention of the government lawyer. The government lawyer persists. The defense lawyer turns to the court, and the court also persists. It says it's okay. It's okay. Mental element doesn't matter. What the victim thought doesn't matter. And we all know it's wrong. We all know it's wrong. It's absolute. And what the victim thought was, whether in fact they were in actual fear, actually had apprehension, is an element of the crime. But the court provided the jury with written instructions of the correct element. And there is evidence sufficient in the record to meet this element. So what you have to decide whether this error, which was made, which encompasses one page of the transcript, erases all of the rest of the evidence where the court did it right. Well, how do we know that? How do we know whether it does or not? I mean, we have an actual focusing on it. Lawyers clash on this very issue. It's not sort of buried in the middle of 20 pages of judge reading off stuff that the jury can't follow anyway. This is something where the lawyers have it out in the courtroom, and the judge takes sides and takes sides with the government and says, yeah, you don't have to prove that mental element. Sir, what the court did in front of the jury was simply say the words overruled. You think they don't know what that means? Well, I don't. You don't think the jury understands that when two lawyers are having a dispute, and the judge says overruled, then what the judge is saying, the lawyer who raised the objection is wrong, and the lawyer who opposed the objection is right? You don't think they understand that? I do think they understand that. But I think that's different from taking the side. They know how it works. I think it's different from taking the side and saying, oh, yes, the government lawyer is right, and restating it. The court doesn't do that. It does emphasize the very point that the government lawyer made to which the defense objected, that that objection is incorrect. That means that that mental element, as I go back to the jury room, they'll say, well, you remember there was an objection on this point. We don't have to find what was going on in her mind. We don't have to find that because, you remember, the government lawyer told us that. The defense lawyer objected, said, gee, this is wrong. And the judge took sides with the government. It's black-letter law that we have to believe that the jury will follow the instructions that they're given unless there's a compelling reason as to why they shouldn't. How about this is a compelling reason? They were given the written instructions that appropriately instructed them on this element. This was in a rebuttal argument. It was one page of the transcript. How was this done in this case? Was the instructions given before summation or after summation? I haven't tried a case in Judge Malloy's court for a while. The instructions were given after the closing arguments. I believe, Your Honor, you will have to check the records for me. Let me ask a slightly different question. Yes, sir. This is Judge Clifton. Thanks, Judge Clifton. If we accept that the statement by the deputy or the citizen U.S. attorney was incorrect, what's our standard now? Do we have a harmless error standard? We do have a harmless error standard. So what makes us so certain that the jury isn't influenced by this statement? As in any harmless error analysis, you have to take the error in the context of the entire case. In this case, we believe that they were given not only orally but written the instructions that gave them the proper instructions. This certainly was a misstatement. But there were other statements in the record by the assistant United States attorney talking about the reasonable apprehension of fear of Ms. Gordon. So it's not simply that that was ignored by the government. We didn't present evidence or argument on that issue. This was a misstatement. But in the context of the whole record, we certainly believe it was harmless. Let me explain what my concern might be here. I'm not trying to tell you for sure where I wind up. But in the course of argument, that's when the parties are really focused on the significance of instructions. When they hear instructions as a whole, we believe that they follow them. But what the significance of one instruction given after another is when applied to the evidence, that's not so easy. So that's one of the jobs of closing argument, to relate the particular evidence and particular facts to the instructions as they're given. And wouldn't there be at least some concern that in this context, with the prosecutor arguing in so many words, that the state of mind of Ms. Gordon is not something they have to be concerned about? Isn't there at least an appreciable chance that the jury will decide, well, we don't have to go there? It is an error, sir, and it needs to be considered. I do not believe that it rises to the level of overcoming a harmless error burden here. Does it make any difference to you if it turns out that the judge instructed first and then summation came next, so that the last thing that the jury heard was this business about the prosecutor saying, you don't have to worry about what's in her mind? Well, that definitely would be the last thing that they heard, sir. But the last thing that they read were the correct instructions given to them in the jury box. When they went into the jury room, they had to... You mean like they read them in the jury room? How do you know? How do we know they didn't, sir? They were given the instructions to read and to refer to. How do we know what effect this had on them as well? Well, I don't know. How do we know they didn't put on clown suits? Sure, exactly. I mean, you can do that with anything, right? I think that we have to go... We don't know whether they ever looked at those instructions again. No, we do not know. So, assuming as it appears to be the case that the judge instructed first and the lawyers argued next, the last thing they would have heard is the erroneous instruction backed by the court saying overruled. Right. You are correct. That would be the last thing that they heard if they were instructed prior to the argument. In the end, though, the government was only... This whole issue will only go to whether we had to prove an assault in order to sustain this conviction against Mr. Britt. And the Booth case is clear that we can sustain our burden under any of the means that this statute can be violated. Well, we don't know because if they were misinstructed as to one element, for all we know the jury come in there and said, oh, there was element one, no evidence at all, element two, no evidence at all, but when it comes to assault, hmm, well, assault doesn't require them to be afraid because the judge just told us that, the prosecutor just told us that, and the judge sided with the prosecutor. So let's convict based on assault. We don't know. You've got a bad instruction as to one way in which the jury could have come back with a verdict for the government. But they were given a general unanimity instruction. So they had to, if they followed the instruction, they had to be unanimous. They all agree that there is no interference with, what were the three elements again? It would be, now you just asked me, it would be interfere, adult intimidate, or interfere. They all agree, no, there was no interference. What was the other one? Intimidate, interfere, and assault. They all agree, no, she was intimidated. And then they say, but the assault. And they say, well, you know, we think she's assault, but she wasn't really scared. But look, the judge said, you know, the government said, and the judge backed her up, or backed him up, and said that she doesn't have to be scared. And yeah, we can agree on that. We can all agree on that. We don't know what they did. If you've got a bad instruction as to one of the three prongs that you've put in the conjunctive, the fact that they each have to agree on each element doesn't help you any. Well, I disagree with you that we have a bad instruction on one of the elements. We have a misstatement of the law. All right, but follow me along. If you should find yourself saying, well, assume we think there was a bad instruction, you lose, right? I mean, you can't get out by saying, oh, they couldn't believe. I heard you saying it doesn't matter because they couldn't believe there was intimidation. There was no specific verdict form given here. Right, so we don't know how they came out. We don't know. For all we know, the one element they could reach agreement on was assault, as to which, by hypothesis. Although clearly, Your Honor, if you're arguing that any of the cases is weak in terms of evidence, assault is the only prong of this statute that there's any argument to. Intimidation and interference are clear. I see. So what you're saying is we have to assume that the jury must have been overwhelmed by the evidence of intimidation and interference. The jury was overwhelmed by the evidence of all three prongs. The old man walking in with a kitchen knife. With a nine-inch knife, waving it in her face and yelling at her. Right. Can I respond briefly, Your Honor? Well, you're on negative minutes, but I guess so is the government. So the government is deeper into negative minutes. We'll give you one negative minute. Thank you, sir. Let me let you know I've got a question, which is that, okay, let's take the government's theory now, that they were given an indictment and an instruction that charged all three and the conductive. And can you reason from that that the jury must have concluded that all three were satisfied? And if you take their legal argument, which I understood you disputed, and I'm not trying to get you to back off of that, can you infer from that they must have concluded all three, so even if as a matter of law they're misled with regard to the element of assault, they still found interference and they still found intimidation, and under the government's legal argument, that's sufficient to convict? I don't think we can we know what whether they found all three or just one or some of them found interference They had to find all three. They were instructed in the conjunctive. We have to assume they found all three. Then I still think, I mean, the instruction actually, I think the government is wrong about whether or not the apprehension of fear only goes to the assault prong because the instruction says that the first the defendant intentionally used force in assaulting, intimidating, interfering with, and then it defines the use of force as there is a use of force when one person intentionally wounds another or when one person intentionally makes a display of force which reasonably causes a person to fear immediate bodily harm. And so it's the use of force that brings in the fear, and that goes with respect to assault, intimidate, interfere. And the last thing they heard is let's just disregard this use of force. And I would, Your Honors, we're questioning the government about whether or not the government corrected its position. I would note that the three cases that the government cites to in its brief, Tam, Cooper, and Et City all involve situations where the mistake was brought to the prosecutor's attention and the prosecutor said, you know what, I'm wrong. And so then the jury was actually instructed correctly about the evidence or the law. It was different in the different cases. And therefore, the jury went back to the deliberations with a correct view of the facts and the law. In this case, the government did not correct itself. And this was an issue that was discussed outside the jury's view several times in the position, you know, we were arguing that you've got to prove fear, and the government was taking a position that it didn't. And it's not like it accidentally fell into making this mistake. I would also note, finally, that the government has not argued harmless error in its brief. And if you don't argue harmless error, you waive that argument. Thank you. Thank you. The case has now been submitted. And we'll stay on the phone here because we've got another phone argument. We have now United States v.
judges: Kozinski, Fernandez, Clifton